## BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
OSNAT LUPESKO-PERSKY
JOSHUA D. KIRSHNER

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

September 28, 2012

**BY HAND**
Hon. Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street, Room 1350
New York, New York 10007

### RE: UNITED STATES v. MENACHEM YOULUS
### 12 Cr. 36 (CM)

Dear Judge McMahon:

On October 11, 2012 at 4:00 PM, this distinguished Court will have the awesome responsibility of sentencing Menachem Youlus, following his plea of guilty to Mail Fraud and Wire Fraud.

We respectfully enclose for your Honor's review, a formal Sentencing Memorandum together with many letters written by family, friends and even some of the "victims" of the defendant's crimes. Indeed, some of the victim impact letters contain heartfelt and might I add, eloquent pleas that this Court sentence Mr. Youlus with compassion and leniency, despite having been personally victimized by the defendant's criminal conduct.

To be candid, this case is quite unique for many reasons. Counsel for Mr. Youlus have continued to struggle in the hope of fashioning an argument that may resonate with this Court in order to encourage a sentence that is well below the advisory Guideline range, a sentence that is "sufficient but not greater than necessary" to ensure respect for the law and also apply appropriate punishment. Indeed, despite a career in Criminal Justice that has continued for 37 years, including four years as a prosecutor, counsel finds himself, perhaps for the very first time, struggling with what I might say on behalf of this client that may actually

-1-

BRAFMAN & ASSOCIATES, P.C.

help convince this Court to temper Justice with mercy when ultimately concluding exactly how Mr. Youlus should be punished for his crimes.

As this case marks the very first sentencing in which counsel will have appeared before this Honorable Court, counsel's anxiety level was even further enhanced. Accordingly, counsel did what any good, experienced criminal defense lawyer would and should do prior to his or her first sentence before any particular Court. I have read, researched and spoken with other experienced criminal defense lawyers and prosecutors who have appeared before your Honor, and I have also read this Court's own very eloquent and deeply personal thoughts so relevant in any case when the issue of sentence is to be determined, Colleen McMahon, *The View from Gabbatha: Meditations from the Judge's Bench* (2003) [hereinafter "*Gabbatha*"].

In substance, I have learned that this Court is very independent and very serious about the job of being a District Court Judge and in particular, most serious about the role of a sentencing court. I have also learned and take comfort in the knowledge that this Court will carefully read and study everything presented on behalf of all defendants and will also listen intently to all arguments by counsel at the time of sentencing. Those facts offer general comfort, and even greater comfort in a terrible case, like this case, where even experienced criminal defense counsel are struggling in how to make a good presentation on behalf of a defendant who has committed a serious crime but who nevertheless has so many wonderful and redeeming qualities as a man, husband, father and son.

To be candid, even the decision to write this personal letter to your Honor was a struggle, as more often than not, counsel would simply provide a transmittal letter and allow the Sentence Memorandum to speak for itself. In recent months however, counsel has become attached to Mr. Youlus in a way that is unusual, especially for experienced lawyers, who in most criminal cases try to keep a distance between the client and the firm. Simply put, Mr. Youlus has become more than a client to this firm and his personal abject terror about the uncertainty of his future has now infected all of us who are determined to do our best to save him.

In preparing for sentencing, counsel has read and studied this Court's writings in *Gabbatha*, a publication in which your Honor openly discusses this Court's clear philosophy on crime AND punishment and does so in a way that presents a genuine challenge to lawyers begging for leniency on behalf of a defendant who has admitted to serious criminal conduct. Indeed, after reading and hopefully understanding this Court's "Meditations from the Judge's Bench," counsel decided to address some of the issues in a personal letter to your Honor

BRAFMAN & ASSOCIATES, P.C.

that this Court will hopefully review "before" reading our formal Sentencing Memorandum.

As a practical matter, after my first quick reading of your Honor's beliefs as expressed in *Gabbatha*, counsel was at a complete loss for words, despite a career in which I have always prided myself on being a creative "wordsmith."

For example, I was deeply concerned with the realization, as the Court noted, that Gabbatha was the site of "history's most notoriously unjust verdict" and equally concerned that at Gabbatha, Pilate's sole concern appeared to have been an effort to satisfy the public's "'demand'" which in that tragic case perverted the system of Justice "by preferring the public's verdict to the right one." *Gabbatha*, *supra*, at 3, 7. Just imagine counsel's grave thoughts when reading those facts and being faced with certain victim impact letters "demanding" a severe sentence in a case where the "public" only knows of the grave sin Mr. Youlus committed, but nothing of his true merit as a person.[1]

So I kept reading *Gabbatha* over and over again as any serious lawyer facing an intriguing challenge would hopefully do. Eventually I came away with the following observations and concerns that I respectfully share with the Court, not to argue, but so that your Honor understands and appreciates that my plea is not from ignorance, but made with knowledge and great respect for this Court's deep beliefs, even as to certain conclusions that I may disagree with or would argue need not be applied in this case as to this defendant now that the Guidelines are advisory.

To be frank, counsel recognizes that there is "nothing" I can say that will excuse the defendant's conduct in this case, nor will I not even try. From everything I have now studied, it is clear that this Court firmly believes that "actions have consequences" and that "punishment" has nothing to do with "forgiveness." *Gabbatha*, *supra*, at 82. Accordingly, counsel does NOT ask your Honor to "excuse" or forgive Mr. Youlus from the "consequences of his crimes" despite his deep regret. Regret, I might add, for his crimes; not regret that he was caught; deep regret that he violated the laws of man and the laws of God.

Instead, counsel appeals with great respect for the Court to weigh and consider just how "much" punishment is required and what form that punishment should take. We submit that this Court may appropriately design a

---

[1] In our Memorandum, we cite to numerous other victim impact letters where the "victims" plead with your Honor for compassion and leniency when sentencing the defendant.

BRAFMAN & ASSOCIATES, P.C.

compassionate sentence that truly meets the requirements of honest and fair justice in the case of a first offender, who quickly and publicly accepted responsibility for his crimes, made <u>complete</u> Restitution to the victims of his crimes[2] and will spend the rest of his life carrying the deep shame of his crime long after the sentence he receives is completed; a Rabbi going forward with the knowledge that his actions desecrated the sanctity of the Torah. As a serious Jew, I cannot imagine greater damage than he has already caused to himself. While a prison sentence will significantly raise the temperature of his ordeal, nothing will remove him from the "Hell" he is already living and dying in; a Hell I might add from which there is no reprieve regardless of the sentence imposed.

Counsel begs the Court to conclude that incarceration may not be necessary to affect the aims of Justice, in this case, as to this defendant under facts that I dare predict will never be fully replicated by any other person, so that the issue of general deterrence while a live issue, should not be of prominent concern.

I know in my heart the extraordinary distinction between the facts of this case and the case of Lorna Muldoon whose plight this Court so eloquently discusses in *Gabbatha*. *Gabbatha*, *supra*, at 87-89. The facts are different, the people are different and the narcotics "addiction" in Ms. Muldoon's case does not compare to the lying "addiction" in the case of Mr. Youlus, despite the letters and reports that honestly suggest that his inability to control his habitual exaggeration has, in a sense also rendered him somewhat "helpless" in these crimes -- not an excuse, a fact.[3] Despite the strong difference in the two cases, counsel draws at least some comfort from the Court's powerful observations in the case of Ms. Muldoon, that the "collateral damage" that would befall others upon the incarceration of that defendant was a valid consideration that appropriately

---

[2]  We respectfully bring to your Honor's attention that counsel has on deposit in this firm's Special Account **$862,044.33**, which represents full Restitution the Government has demanded of the defendant. We await this Court's direction as to how these funds are to be distributed. The fact remains however, that when the defendant appears for sentencing on October 11, 2012, the victims of his crimes will soon be compensated for the losses they sustained as a result of the defendant's criminal conduct. We respectfully submit that a defendant's re-payment in full of the financial loss sustained by his victims is a very important fact or characteristic among many that a Court may consider when determining an appropriate sentence under § 3553.

[3]  We also respectfully note that the Muldoon case was governed by the Guidelines that were "mandatory" at the time.

BRAFMAN & ASSOCIATES, P.C.

should give a Court serious pause when deciding whether to separate a defendant from his family for an extended period of time. As the Sentence Memorandum in this case makes clear, there are many in this case who are indeed "weak and helpless" and for whose misery we know this Court is not immune. The only question is how much their plight may impact on the Court's decision as to the punishment this defendant would otherwise merit.

Finally, with careful and very genuine respect, I point to the fact that in *Gabbatha*, this Court bemoaned the facts that in certain ways, the Court's hands were tied by the "mandatory" Sentencing Guidelines in effect when this Court's writing was published. Thus, in pertinent part, this Court noted:

> I would like to have the breadth of discretion to deal with criminals as the spirit, or the moment, or the transgressor moves me. Unfortunately, I do not have the ability to set aside the rules. But sometimes I can find ways around them.

*Gabbatha, supra*, at 103; *see also id.* at 102 ("One of the frustrations of being a federal judge is that I don't have unfettered discretion to sentence as I would like.").

As this Court now knows better than any of the advocates in this case, today your Honor has the power, the authority and I might add the duty to consider all of the characteristics of this defendant and impose any sentence this Court deems appropriate, even a sentence well below the new "advisory" Guidelines that are no longer even considered presumptively reasonable, *see* Nelson v. United States, 129 S.Ct. 890, 892 (2009) ("[D]istrict judges, in considering how the various statutory sentencing factors apply to an individual defendant, 'may not presume that the Guidelines range is reasonable.'"); United States v. Davis, 402 Fed. Appx. 607, 608 (2d Cir. 2010).

As a sentencing Court is no longer shackled by binding Guidelines, it has wide discretion in creatively fashioning a sentence that is formulated after careful thought to fit the facts of the case and the person about to be sentenced. Accordingly, we plead with your Honor to do exactly that: fashion a sentence that is perhaps unique to this case and this defendant. While some might argue that only incarceration is appropriate, we submit that a very different sentence is indeed appropriate. Although we believe that a sentence of Probation could equitably balance Menachem Youlus' life of good deeds and his family situation with his crime, I recognize that a sentence that combines a significant period of House Arrest, Community Service and Probation can be more punitive but also

BRAFMAN & ASSOCIATES, P.C.

productive, without separating the defendant from his large family that will be forever scarred by the forced separation that incarceration will entail. Indeed, the words of one of the individuals characterized by the Government as a "victim" are compelling:

> As victims of Rabbi Youlus, who purchased an alleged Sefer Torah Scroll from the holocaust we urge the Court to show the utmost mercy in sentencing, including foregoing or suspending any incarceration given the dire effect it would incur on innocent parties of the greater community. Rabbi Youlus demonstrates his remorse and any incarceration would cause undue suffering and punishment on his innocent young children and chronically ill wife. Our congregation, suffering from the natural humiliation and hurt of marketing our Torah as a relic from the holocaust views Rabbi Youlus potential jailing as nothing more than adding to the suffering, humiliation, and hurt of the greater community to which the Youlus family in other matters has greatly contributed.
>
> \* \* \* \*
>
> Like many victims, our goal in purchasing our Torah was to not just memorialize those unjustly victimized in the holocaust through family separation, hard labor, humiliation, and incarceration but to worship with a kosher Torah with letters and words arranged to perfection. Rabbi Youlus went to great lengths to ensure our Sefer Torah was written accurately having professional known scribes check and recheck its genuine perfection. Our appeal to forego or suspend any incarceration is sincerely to avoid further hardship within our community, including Rabbi Youlus beloved innocent family with young children, friends, and ourselves as victims. We applaud the remorse and restitution that Rabbi Youlus undertakes and therefore urge you to make this central in offering a sentence that will not further punish given the untold suffering we along with his ill wife and children as a community have endured.

(Letter of Rabbi Moshe Goldstein, Emphraim Goldstein and Marshall Levin, Exhibit 10 at 1.)

Finally, while we suggest that a sentence that does not include incarceration would be fair, just and appropriate, if this Court ultimately concludes that only imprisonment will actual punish Menachem Youlus, then we respectfully suggest that a substantial period of imprisonment is neither necessary nor

BRAFMAN & ASSOCIATES, P.C.                                        -7-

reasonable in a case where the degree of genuine humiliation and the very real punishment the defendant has already endured is already crystal clear to all who know this case.

Counsel wishes to thank this Court in advance for the time and attention a careful review of these materials will require and for the tolerance and understanding that counsel hopes the court will find when reviewing this letter in particular. Indeed, counsel is hopeful that this letter and the enclosed more formal submission are accepted in the deeply respectful manner in which they are being offered, by serious advocates who are somewhat overwhelmed by the extraordinary responsibility they have undertaken in the representation of Menachem Youlus.

Respectfully,

Benjamin Brafman
BB2285

cc:   AUSA Nicole Friedlander
      AUSA Janis Echenberg